UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES                              :

    v.                                        : Crim. No. 05-231 (RJL)

FREDDIE TILLERY, JR.                       :

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW Defendant, Freddie Tillery, Jr., through undersigned counsel, Stephen F. Brennwald, and in support of his Memorandum in Aid of Sentencing, states as follows:

**Proposed Sentence**

In order to simplify this matter, Mr. Tillery, at the outset, wishes to set forth the sentence he is asking this Court to impose, and to provide a very cursory explanation why the sentence is appropriate in this particular instance. He will discuss the bases for his request more fully below.

Mr. Tillery is asking this Court to sentence him to a period of Supervised Release, taking into account the fact that he spent 73 days in jail before his transfer to a halfway-house, and will also have spent nearly seven more months in the halfway-house by the time he is sentenced. Mr. Tillery has remained drug-free while on release (much to his delight), and will be employed at the time of sentencing (and has held several jobs while in the halfway-house). The reasons that Mr. Tillery requests this sentence, briefly, are as follows:

First, Mr. Tillery is "only" responsible for the sale of 1.46 grams of cocaine base. Without intending to minimize his crime, the defendant submits that it is virtually unheard of for the sale of such a small amount of drugs to be prosecuted in the United

States District Court. Rather, the case would normally be brought in the Superior Court of the District of Columbia, where the guidelines applicable to Mr. Tillery would be dramatically lower than the career-offender guidelines available in Federal court.[1]

Second, the Defendant submits that the case was only brought in Federal court because the government[2] *incorrectly* believed that Mr. Tillery was intending to mastermind a prison-break involving a number of defendants who were then on trial for a series of local bank robberies. The government felt a sense of urgency in setting Mr. Tillery up and uncovering the alleged plot, and it hoped that Mr. Tillery's status as a career-offender (after one counts the drug sales in this case) would force him to reveal the plan and its participants. As the government eventually discovered, there was no such plan, certainly not one involving a small-time drug user like Mr. Tillery.

Third, once the government discovered that its information was incorrect – that Mr. Tillery was not planning any prison break - Mr. Tillery had already been indicted, and the charges could not simply be dismissed. Yet without the government's erroneous assumptions and beliefs, Mr. Tillery never would have been involved in this crime – indeed, the crime never would have occurred.

Fourth, Mr. Tillery is a long-time drug addict, and sold the drugs solely to support his habit.

---

[1] The guidelines for Mr. Tillery in U.S. District Court, given his career-offender status, provide a range of 151 to 188 months. The guidelines for Mr. Tillery in the Superior Court, given his two prior drug convictions, provide a range of 20 to 42 months. Moreover, in the Superior Court, Mr. Tillery's criminal history of "2" would argue in favor of his receipt of a sentence at the bottom end of the guideline range, as the criminal history category under which he would be sentenced includes defendants with criminal histories ranging from "2" to "3.75." Even more telling of the disparity between the two sentencing schemes, under the Superior Court guidelines, Mr. Tillery would be probation eligible.

[2] When using the term "government," the defendant is referring to the government "generically," and not to Assistant U.S. Attorney Anthony Scarpelli, who is now representing the government in this matter. For the record, Mr. Scarpelli has been more than gracious in his handling of this case, and in his dealings with the defense.

Fifth, Mr. Tillery has successfully participated in drug treatment while on release, has remained drug free, has maintained employment, and has done everything possible to abide by his conditions of release. He has taken the opportunities given to him because of his supervision in this case, and made the most out of them.

Finally, by the time of sentencing, Mr. Tillery will have been under some form of confinement for nearly a year, and will have done nothing to indicate that he would return to crime if he is not incarcerated. Supervised release will more than adequately address and satisfy all of the factors this Court must consider under 18 U.S.C. 3553(a).

**Factual Background**

Defendant entered an *early guilty plea* to one count of Distribution of Cocaine Base after FBI agents sent a cooperating witness to Mr. Tillery with the express purpose of purchasing cocaine from him.

The FBI targeted Mr. Tillery for this operation because it has received information (which turned out to be false) that Mr. Tillery intended to organize a prison or court escape (it's not clear which of these two options the government believes was being planned) of several defendants then on trial in the United States District Court for the District of Columbia for a series of bank robberies. The FBI apparently hoped to put Mr. Tillery in an impossible position – by video and audio-taping the drug transactions – thereby forcing him to reveal his sinister plan.

Mr. Tillery, of course, has maintained all along that the claim that he could somehow organize any such event and break prisoners out of either court or jail is preposterous, and completely untrue. While such escapes have occurred in the history of mankind (such as when gangsters in the Old West tied a rope to a bar in a remote Texas

one-room mud-walled prison and pulled the wall down with a mule or horse…), it is difficult to fathom that this could successfully be accomplished in this day and age, and especially that Mr. Tillery could somehow mastermind and carry out such a plan.

Nevertheless, Mr. Tillery, who was addicted to drugs at the time of this crime, did sell two small bags of cocaine to a confidential informant on one day, and three bags of cocaine the next day.  The two sales involved a total of 1.46 grams – around $100 dollars' worth - of cocaine.

Mr. Tillery does not mean to minimize the wrongfulness of his actions in this case.  He should not have sold cocaine to anyone, no matter how small the amount, the identity of the person purchasing that cocaine, or the reason for the purchase.  He merely wishes this Court to understand this case for what it is – a government-sponsored, small-quantity drug transaction.

### 3553(a) Factors and Analysis

As this Court well knows, sentencings taking place after the Supreme Court's decision in *United States v. Booker*, 543 U.S.     (2005) must be guided by the factors listed in 18 U.S.C 3553 (a).[3]  In accordance with this Court's directive, the defendant submits the following sentencing analysis pursuant to this statute:

---

[3] Imposition of a sentence

```
   (a) Factors To Be Considered in Imposing a Sentence. - The court
shall impose a sentence sufficient but not greater than necessary,
to comply with the purposes set forth in paragraph (2) of this
subsection.  The court, in determining the particular sentence to
be imposed, shall consider -
   (1) the nature and circumstances of the offense and the history
and characteristics of the defendant;
   (2) the need for the sentence imposed -
     (A) to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the
offense;
     (B) to afford adequate deterrence to criminal conduct;
```

**Factor 1.  Nature and Circumstances of the Offense/History and Characteristics of the Defendant**

As noted above, this offense occurred after the government decided to "set Mr. Tillery up" and have him sell a cooperating witness a very small amount of cocaine on two occasions for the purpose of forcing Mr. Tillery to reveal what turned out to be a non-existent plan to organize a breakout of a group of defendants charged with bank robbery.

While Mr. Tillery does not deny selling the cocaine in this case, the crime was the brainchild of the government, not Mr. Tillery.  He is not claiming that he was entrapped, as his drug addiction pre-disposed him to sell cocaine to any person approaching him with such a request.  However, he did not go out looking for someone to whom he could sell, but rather was approached by a government agent, who induced him to sell.

---

```
        (C) to protect the public from further crimes of the
    defendant; and
        (D) to provide the defendant with needed educational or
    vocational training, medical care, or other correctional
    treatment in the most effective manner;
        (3) the kinds of sentences available;
        (4) the kinds of sentence and the sentencing range established
    for -
            (A) the applicable category of offense committed by the
    applicable category of defendant as set forth in the guidelines
    issued by the Sentencing Commission pursuant to section
    994(a)(1) of title 28, United States Code, and that are in
    effect on the date the defendant is sentenced…
        (5) any pertinent policy statement issued by the Sentencing
    Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on
    the date the defendant is sentenced;
        (6) the need to avoid unwarranted sentence disparities among
    defendants with similar records who have been found guilty of
    similar conduct; and
        (7) the need to provide restitution to any victims of the
    offense.
```

With respect to Mr. Tillery's "characteristics," he is 34 years old, and has four children.  As the PSIR notes, he has used drugs since the age of 18.  His drug use resulted in his need to support his habit, which in turn led to each of his convictions.  Since his release pending sentencing in this case, Mr. Tillery has obtained several jobs, and has remained, quite commendably, drug-free.  Mr. Tillery has been living in a halfway-house, and is very proud that he has remained drug-free and employed, in view of his past struggles with addictive substances.

When one looks at the small amount of cocaine sold in this case, the defendant's drug addiction, the circumstances of the sales, and the defendant's progress since his arrest, a sentence that allows Mr. Tillery to continue his employment and stay on the right track is certainly a reasonable one.

**Factor 2.  The need for the sentence imposed**

This Court must also impose a sentence based on the need for the sentence to

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

A) In this case, although the offense is a serious one (technically a felony), it involves the sale of 1.46 grams of cocaine, spread out over two sales. Mr. Tillery does not need to receive a lengthy sentence – especially one based on career-offender guidelines – to receive "just punishment" for this crime. He has already been under some form of custody since his arrest on May 17, 2005, and there is no reason to believe that people would lose respect for the laws of this country were Mr. Tillery to receive a sentence below the guideline range suggested in the U.S. Sentencing Guidelines.

. B) If Mr. Tillery were to receive a sentence imposed pursuant to the Superior Court guidelines, the goal of deterrence would be achieved, as there is no need for a lengthy sentence to achieve deterrence in this case. Other people similarly situated (drug addicts standing on a street corner selling dime bags and $20 rocks of cocaine) would not conclude that doing so carried no consequences when Mr. Tillery spent nearly two and a half months in prison and another seven months in a halfway-house because of his involvement in selling a small amount of cocaine, especially when the sale occurred for a reason that turned out to be without basis.

C) In order to protect the public from further crimes from the defendant, all this Court will need to do is to hold some form of punishment over his head. Mr. Tillery has been doing everything he can to stay out of trouble since he was placed in a halfway-house. As long as he fears what could happen were he to re-lapse and begin using drugs again, he will stay crime-free. He values his freedom, and is earnestly trying to turn his life around. This "threat of incarceration" will do more to protect the public than anything other than straight incarceration. And as noted above, because Mr. Tillery is finally drug-free, it would be counter-productive to put him back in prison and remove

him from the supervision that has allowed him to function crime-free in society, given that whatever sentence he receives, he will be released from prison at some point in the future and would need to re-start his drug-abstinence program from scratch and begin looking for work and establishing positive contacts in society all over again.

D)  With respect to assisting the defendant with vocational and other needs, defendant submits that he can obtain any services he needs in the community, rather than in an institution.  It would be rather ironic, given the generally poor state of educational and vocational services in a prison setting, if the government were to argue that Mr. Tillery could receive better training and services in prison rather than in the community. There are many more programs in the community to help offenders acquire necessary work skills than there are in prison.

**Factor 3.  The kinds of sentences available**

Because of the Supreme Court's decision in *Booker, supra*, and because the amount of drugs in this case is so small as to not provide for the imposition of a mandatory sentence, this Court is free to sentence Mr. Tillery to any sentence it deems appropriate.

**Factor 4.   The kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced**

The United States Sentencing Guidelines, as noted in the Pre-Sentence Report, provide a guideline range of 151 to 188 months in prison, a term of supervised release of at least three years, mandatory drug-testing, a potential fine, and a special assessment of $100.

**Factor 5. Any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced**

Mr. Tillery has two prior convictions. The first is for Attempted Distribution of $15 worth of cocaine in 1995, some eleven years ago. The second is also for Attempted Distribution of Cocaine, in 2001.

The amount of drugs involved in each of the convictions was minor, and reflects the conduct of a drug-addict who sold drugs to support his drug habit. This goes a long way toward explaining why he received probation in each case.[4]

Despite his lack of any record of violence, or of involvement in any major drug distribution scheme, and in spite of the fact that the instant offense involved less than one and a half grams of cocaine, Mr. Tillery now faces the prospect of being sentenced as a career-offender. Such a sentence is unwarranted in this case.

One of the purposes of the career-offender guideline, found in § 4B1.1, is to achieve uniformity in sentencing among similarly-situated defendants. However, nowhere is the "uniformity" provided by the guidelines more obviously an illusion than in the career-offender provision. Moreover, of all of the various provisions of the sentencing guidelines, that provision deserves the very least deference from this Court.

The principal reason the government and some courts have given for continuing

---

[4] Of course, as the Pre-Sentence writer notes, Mr. Tillery's adjustment to those prior periods of probation was not without difficulty. In the first case, his probation was revoked and he was sentenced to 120 days in prison. In the second, although Mr. Tillery kept his appointments with his probation officer and attended NA meetings, he was unsuccessful in his efforts to stop using drugs. This resulted in a judge's termination of Mr. Tillery's probation unsatisfactorily.

These prior failures on probation are why counsel is particularly proud of Mr. Tillery's adjustment to his limited freedom in this case while in the halfway-house. As noted above, Mr. Tillery has not used drugs since he was released to a halfway-house last July, and he has obtained and continued employment since then. He has also abided by all of the rules of the halfway-house, and has never been disciplined for a curfew or other violation. When one considers how difficult it is for most drug addicts to succeed in a halfway-house, Mr. Tillery's progress is heartening.

to give the guidelines -- as a whole -- "great weight" is that the Sentencing Commission has "carefully calibrated the extent to which offender characteristics determine a sentence," *United States v. Wilson*, 355 F.Supp.2d 1269, 1275 (D. Utah 2005).

But that rationale simply does not apply to the career-offender provision. Section 4B1.1 has nothing to do with the "institutional advantages of the Sentencing Commission," *id.* at 1281, and is not a product of the Commission's expertise or study. Rather, Congress dictated that the Sentencing Commission adopt the overbroad categories found in § 4B1.1 when it passed 28 U.S.C. § 994(h), which directed the Commission to "assure that the Guidelines" were greatly enhanced "for categories of defendants in which the defendant is eighteen years old and has been convicted of a felony that is a crime of violence or a controlled substance offense and has been previously convicted of two or more prior felonies, each of which is either a crime of violence or a controlled substance offense." The Commission did create such categories in § 4B1.1 ***but it has now candidly admitted that that provision has been one of the four areas in which it feels that the Sentencing Guidelines have either created or failed to reduce unwarranted disparities in sentencing***.

In its recent self-evaluation, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* (2004), the Commission touts the Guidelines' success in reducing unwarranted disparity in general, including inter-judge disparities and regional disparities. The disparity that remains, the Commission concludes, is attributable in large part to four factors: 1) mandatory minimums; 2) the 100:1 crack/powder disparity; 3) ***the career offender provision***; and 4) the inability of the guidelines to ameliorate the effect

of disparate policies among U.S. Attorneys and disparate practices among individual prosecutors.

The Commission specifically identifies the career-offender provision as a sentencing rule that disproportionately impacts a "particular offender group" but serves "no clear sentencing purpose." *15-Year Assessment* at 131-33. The Commission states:

> [P]reliminary analysis of the recidivism rates of drug trafficking offenders sentenced under the career offender guideline based on prior drug convictions shows that their rates are much lower than other offenders who are assigned to criminal history Category VI.

Id. at 134. This suggests that the career offender guideline range is not necessary to protect the public from future crimes of a defendant when the provision's application rests on a prior drug trafficking conviction.

Moreover, the Commission acknowledges that the career offender provision disparately impacts black offenders, who constituted 26% of offenders sentenced under guidelines in 2000, but were 58% of offenders sentenced under the career offender provision, due mostly to the "inclusion of drug trafficking crimes in the criteria qualifying offenders for the guidelines." *Id.* at 133.

Under *Booker*'s non-mandatory scheme, this Court is free to recognize that the guidelines' one-size-fits-all approach to "career offenders" -- treating everyone with a certain statutory maximum identically, regardless of the number or nature of their qualifying predicates -- ***in fact undermines the goal of uniformity set forth in § 3553(a)(6)***. See *United States v. Carvajal*, 2005 WL 476125 (S.D.N.Y. 2005) (career offender guidelines satisfy certain goals of sentencing not met by non-career guidelines

but can be excessive in light of the nature of the defendant's recidivism "for the Guidelines for Career Offenders are the same regardless of the severity of the crimes, the dangers posed to victims' and bystanders' lives, and other appropriate criteria;" sentencing at 168 months where non-career range was 63-78 months and advisory career offender range, after overrepresentation departure, was 210-262 months).

In *United States v. Phelps*, 366 F.Supp.2d 580 (E.D. Tenn. 2005), the court made clear that because the guidelines are "the result of a democratic and deliberative process designed to give tangible expression to the nation's collective penal philosophy," it would generally treat the guidelines as a "major and persuasive factor" -- not to be "second-guess[ed]" via the court's own "ideological gloss" and "controlling" as to that of which they are representative, *i.e.*, "society's collective opinion as to the sort of sentence merited by a faceless defendant who has committed a particular offense under certain abstract circumstances." *Id.* at 589. However, noting that "it is not unusual that the technical definitions of 'crime of violence' and 'controlled substance offense' operate to subject some defendants to not just substantial, but extraordinary increases in their advisory Guidelines ranges," the court singled out career-offender cases as ones in which it might find a non-guidelines sentence sufficient but not greater than necessary to fulfill both Congress's desire to punish recidivism and the purposes of § 3553(a). *Id.* at 590. The court noted in particular the likelihood of such a finding "***where the defendant barely qualifies as a career offender***." *Id.* (emphasis added).

In Mr. Tillery's case, it is clear that the uniformity in sentencing that the Guidelines seek to achieve would punish him much more harshly than is fair and/or appropriate. As noted earlier, he technically qualifies as a career-offender despite the fact

that each of his convictions involved very small amounts of cocaine. The guidelines therefore allow Mr. Tillery to face the same sentencing range as a defendant who was involved in three successive sales of large amounts of cocaine undertaken for profit (rather than because of the need to support a drug habit). This, the defendant submits, is both inappropriate and unnecessary to carry out the purposes enumerated in § 3553(a).

**Factor 6  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

The defendant has already discussed the issue of unwarranted sentencing disparities created by the career-offender provision of the guidelines. In connection with Factor Six, therefore, the defendant will address the disparity issue in the context of the sentencing extremes that now exist between defendants sentenced in the Superior Court of the District of Columbia – where this case belonged – and defendants sentenced in Federal court.

As this Court knows, a transaction involving this small a quantity of cocaine is almost never brought in Federal Court. In fact, counsel has never, in seventeen years of Federal practice, handled a case with such a small amount of drugs in Federal court. It is likely this Court never has either.

This case clearly should have been brought in the Superior Court of the District of Columbia. It was not brought there, counsel submits, because the government wanted Mr. Tillery to face the draconian sentence he now faces as a career offender when considering whether to talk to FBI agents about the alleged prison/court break-out plot.

As the pre-sentence report notes, under the United States Sentencing Guidelines, Mr. Tillery, because he has two prior drug convictions, is a career offender who faces a guideline range of 151 to 188 months.

Had this case been brought in the Superior Court of the District of Columbia (where it would have been were it not for the circumstances that led to Mr. Tillery's arrest), Mr. Tillery would be probation-eligible.  Pursuant to the ***non-mandatory guidelines*** of the Superior Court, Mr. Tillery's two prior convictions – both for Attempted Distribution of Cocaine – would have counted as one point each in the criminal history category of the Superior Court's guideline scheme.  His conviction in this case, coupled with his two-point criminal history, would have produced a guideline range of 20 to 42 months, with probation eligibility.  It is also important to note that under the Superior Court guideline scheme, defendants such as Mr. Tillery are eligible for a sentence of 20 to 42 months if their criminal history points fall in anywhere in the "2" to "3.75" point range (points are assessed in quarter-point increments).  Because Mr. Tillery would have had two criminal history points – the lowest number of points in that criminal history category - he would have faced a sentence at the bottom end of the guideline range, i.e., about twenty months in prison.

Moreover, this twenty-month sentence could be suspended by the court, as Mr. Tillery would be probation-eligible under the Superior Court guidelines.

But because the government knew that the defendant had two prior convictions, and would face a draconian sentence were a judge to follow the sentencing guidelines' career-offender provision, it chose to bring the case against Mr. Tillery in this Court, hoping to gain his cooperation in revealing the non-existent prison-break plot.  In so doing, it shifted Mr. Tillery from a group of defendants who would be probation eligible, under Superior Court guidelines, to a group facing exponentially more severe penalties.  The government also needlessly wasted this Court's valuable time.

In the end, the staggering disparity in sentencing Mr. Tillery will face because he was charged in Federal court instead of the Superior Court is shocking, and unwarranted.

**Factor 7.  The need for restitution to any victim**

As the Pre-Sentence Report notes, there is no discernable victim in this case.

**Conclusion**

Mr. Tillery does not deny that he sold drugs to a confidential informant.  He also does not deny that it was wrong to do so.  Further, he admits that he has been convicted two times before for selling small quantities of cocaine.  But despite these realities, Mr. Tillery is not deserving of a sentence of the kind contemplated by the U.S. Sentencing Guidelines.

He has already spent nearly three months in prison, and seven months in a halfway-house.  He has managed to refrain from all drug use, despite his long-standing drug-addiction, and has maintained employment while in the halfway-house.

Were he facing sentencing in the Superior Court of the District of Columbia, he would be looking at a guideline range of 20 to 42 months, with probation eligibility.  Because this case was brought in Federal court, however, he is looking at a sentencing range that is vastly higher than the range provided for in local court, a range that allows him to be incarcerated for more than a decade and a half.

Such a draconian sentence would not be fair or just.  The sentencing range provided for by the Superior Court guidelines is much more reasonable, especially when applied to the facts of this case.  And that range allows for probation.

Mr. Tillery is asking this Court to give him credit for the time he has already

spent in some form of custody (whether jail or halfway-house), and place him on Supervised Release for a period of three years, with drug-testing and treatment as appropriate, and require that he continue full-time employment. With those conditions, defendant submits that this Court will have imposed a sentence that is fair, consistent with the dictates of 3553(a), and likely to ensure that Mr. Tillery remains crime-free and an asset to society.

                                                  Respectfully submitted,

                                                  Stephen F. Brennwald
                                                  Brennwald & Robertson, LLP
                                                  922 Pennsylvania Avenue, S.E.
                                                  Washington, D.C.  20003
                                                  (202) 544-1990

                                      CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a copy of the foregoing Memorandum in Aid of Sentencing was sent, by ECF, to Anthony Scarpelli, Assistant U.S. Attorney, this 9th day of February, 2006.

                                                  Stephen F. Brennwald